**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

D.P., by and through his mother,

     Plaintiff,

       v.

WASHINGTON LEADERSHIP
ACADEMY PUBLIC CHARTER
SCHOOL,

     Defendant.

Civil Action No. 18-2868 (JEB)

## MEMORANDUM OPINION

A disabled student at Defendant Washington Leadership Academy Public Charter School, Plaintiff D.P. was expelled in the fall of 2017 for possessing marijuana and placed at a special-education school for the balance of the academic year. When he attempted to re-enroll for the 2018-19 school year, WLA denied his request, leading him to file a due-process complaint pursuant to the Individuals with Disabilities Education Act. After the Hearing Officer upheld the school's decision, D.P. brought this suit through his mother, alleging a violation of IDEA as well as assorted constitutional provisions and the federal Rehabilitation Act. Now moving to dismiss, WLA contends that the Hearing Officer did not err and that the other causes of action are deficient on their face. Agreeing, the Court will grant the Motion.

## I.    Background

Viewing the facts alleged in the Complaint as true, as is required at this stage of litigation, the Court begins with D.P., who is now 17 and in the 11th grade. See Compl., ¶ 5. He has "been determined eligible for special education and related services pursuant to IDEA with a disability classification of multiple disabilities including specific learning disability and

emotional disability." Id., ¶ 6. During the 2017-18 school year, D.P. "was enrolled at [WLA], a public charter school in the District of Columbia that served as [his] local educational agency [for purposes of IDEA]." Id., ¶ 22.

In August 2017, D.P. "was accused of being in the possession of marijuana on school premises." Id., ¶¶ 24-25. Following a preliminary suspension hearing, the school's Discipline Committee, after holding another hearing, found the charges to be verified and expelled him. Id., ¶¶ 29-30. A subsequent "manifestation determination review meeting was held and the entire team, including the parent, agreed that [D.P.'s] behavior was not a manifestation of [his] disability." Id., ¶ 31. D.P. was then placed in an "interim alternative education setting for the remainder of the school year." Id., ¶ 37 (internal quotation marks omitted). His mother's appeal of the expulsion resulted in WLA's Board of Trustees' affirming the decision in October. Id., ¶ 38. She then filed a due-process complaint challenging the interim placement, which led to WLA's being directed to provide D.P. a different placement. Id., ¶¶ 41-42. He thereafter attended a non-public special-education day school. Id., ¶ 80.

As the new school year approached, D.P.'s mother unsuccessfully sought to re-enroll him at WLA for 2018-19, precipitating another due-process complaint. Id., ¶¶ 82-83. The Hearing Officer this time sided with WLA, holding that the school was not prohibited from barring D.P. from re-enrollment given his expulsion the previous year. Id., ¶ 90. D.P. is thus currently enrolled at a different public charter school, which he and his mother like less. Id., ¶ 93.

In bringing this action, Plaintiff's claims are not entirely clear. In his preliminary statement, he alleges "the continuing violations of Plaintiffs' rights under the Fourth, Fifth and Fourteenth Amendments . . . and reasonable attorneys' fees pursuant to . . . IDEA." Id., ¶ 1. Yet, his causes of action never mention the first and third constitutional violations and instead

allege a denial of a free and appropriate public education (FAPE), presumably under IDEA; a

Fifth Amendment violation in relation to the expulsion hearing; and a violation of the federal

Rehabilitation Act.  WLA now moves to dismiss all claims.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a claim for relief

when the complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a

motion to dismiss under Rule 12(b)(6), the Court must "treat the complaint's factual allegations

as true and must grant plaintiff the benefit of all inferences that can be derived from the facts

alleged."  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal

quotation marks and citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A

court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor

an inference unsupported by the facts set forth in the complaint.  Trudeau v. FTC, 456 F.3d 178,

193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Although "detailed

factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if]

accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678

(internal quotation marks omitted).  Though a plaintiff may survive a Rule 12(b)(6) motion even

if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to

raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555-56 (quoting

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## III.  Analysis

Although D.P. announces in his Preliminary Statement of his Complaint that he is

asserting claims under the Fourth and Fourteenth Amendment, those constitutional provisions

never appear in his actual causes of action, nor does he ever allege facts that would support them. In addition, when WLA pointed this out in its Motion to Dismiss, Plaintiff never responded in his Opposition. The Court, accordingly, will view these claims, if they ever truly existed, as abandoned. That leaves counts under IDEA, the Fifth Amendment, and the Rehabilitation Act, which the Court will address in turn.

A.  IDEA

D.P. first alleges that WLA "failed to offer [him] a FAPE by refusing to allow the student to re-enroll." Compl., ¶ 96. The Court begins with some IDEA basics. The purpose of the Act is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). "Implicit" in IDEA's guarantee "is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 200 (1982). As a condition of receiving funding under IDEA, school districts are required to adopt procedures to ensure appropriate educational placement of students with disabilities. See 20 U.S.C. § 1413.

Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due-process hearing, see §§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel" and a "right to present evidence and confront, cross-examine, and compel the attendance of witnesses." § 1415(h). In the District, a qualified, impartial Hearing Officer conducts the due-process hearing in accordance with the Act. See 5-E D.C. Mun. Regs. § 3030. Parents "aggrieved by" a Hearing Officer's findings and decision may bring a civil action in either state or federal court. See § 1415(i)(2); 5-E D.C. Mun. Regs. §

3031.5.  The district court has remedial authority under the Act and broad discretion to grant "such relief as the court determines is appropriate."  § 1415(i)(2)(C)(iii).

Although Plaintiff never explicitly explains what he is challenging here, it is clear that the target is the Hearing Officer Decision (HOD).  In such a review, the burden of proof is always on the party challenging the administrative determination, who "'must at least take on the burden of persuading the court that the hearing officer was wrong.'"  Reid v. Dist. of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1989)).  Reviewing courts must give "due weight" to the hearing officer's determination, see J.B. v. Dist. of Columbia, 325 F. Supp. 3d 1, 5 (D.D.C. 2018) (citation omitted), and do not "substitute their own notions of sound educational policy for those of the school authorities which they review." Pavelko v. Dist. of Columbia, 288 F. Supp. 3d 301, 306 (D.D.C. 2018) (quoting Bd. of Educ. of Henrick Hudson Cent. Sch. Dist., 458 U.S. at 206).  That said, the Court reviews strictly legal questions de novo.  See Damarcus S. v. Dist. of Columbia, 190 F. Supp. 3d 35, 43 (D.D.C. 2016) (citing Reid, 401 F.3d at 521).

As Plaintiff has attached the HOD to his Opposition, see ECF No. 6-1, the Court may consider it here as it would on a motion for summary judgment.  In other words, as no discovery occurs in this administrative-review case, there is no reason to delay addressing the merits.

In this case, the Hearing Officer issued a careful 10-page opinion, in which he concluded that WLA did not deny D.P. a FAPE by refusing to re-enroll him.  He first explained that, because D.P.'s behavior was not a manifestation of his disability, the School could discipline him in the same manner as any other student, including expulsion.  See HOD at 8; see also 34 CFR § 300.530(b)(2).  Because D.P. was disabled, however, WLA then had to provide him with an interim alternative placement for the remainder of the 2017-18 school year, which it did and

which is not challenged.  See HOD at 8–9; 34 C.F.R. § 300.530(b)(2), (d).  The pivotal question, therefore, was whether an obligation to re-enroll him or place him elsewhere extended to the 2018-19 school year.  The HOD concluded that, if D.P. did not have access to another local educational agency, WLA would still have a responsibility to provide him a FAPE.  See HOD at 11-12.  Yet because D.P. does have such access, he may return to his non-public special-education day school by applying through another local educational agency, be it the District of Columbia Public Schools or another public charter school.  Id. at 12.  WLA, however, has no obligation to otherwise assist in his placement.

In alleging the Hearing Officer erred, Plaintiff's Complaint makes but one argument, buried in a footnote, in which it states, "It is noteworthy that [the] Hearing Officer . . . points to no case law supporting his position that the Defendant has no continuing obligation to provide a FAPE to DP because other LEA's are available."  Compl. at 15 n.2.  D.P.'s Opposition, moreover, merely restates this observation along with a conclusory assertion that "the statute does not make this exception either," but offers no further basis to believe that the HOD was mistaken.  See Pl. Opp. at 18.

Putting aside the unhelpfulness of Plaintiff's brief on this count, the Hearing Officer's determination does rest on a question of law subject to de novo review.  See Damarcus S., 190 F. Supp. 3d at 43.  The Court need not toil long here, however.  For much the same reasons as those articulated in the HOD, it agrees with the Hearing Officer's determination that WLA is under no continuing obligation to provide D.P. a FAPE in an academic year subsequent to his expulsion, provided that he has access to another local educational agency.  As the Hearing Officer noted, the regulation governing the school's duty to provide such a placement repeatedly refers to actions that occur in the "same school year."  34 C.F.R. § 300.530(b)(1), (b)(2), (d)(4); see also

HOD at 9-10. The logical implication is that a school's obligation to a student in a particular academic year following the imposition of disciplinary measures does not automatically extend to a subsequent year. A contrary conclusion, moreover, could restrict the ability of a school to expel any student with disabilities. This would result in some tension with the regulation's decree that school personnel may discipline a student with disabilities "in the same manner and for the same duration" as a student without disabilities, provided the problematic behavior is not a manifestation of the student's disability. See 34 C.F.R. § 300.530(c). As the Hearing Officer correctly interpreted the law at issue and Plaintiff articulates no other viable challenge, the HOD cannot be reversed on this score.

    B. Fifth Amendment

    D.P. next asserts that WLA violated his Fifth Amendment rights "by failing to allow [his mother] to examine the physical evidence and failing to preserve the physical evidence." Compl., ¶ 98. This claim relates to the hearings in which D.P. was suspended and ultimately expelled for marijuana possession. His mother apparently wished to view the actual marijuana, which was destroyed before she could see it. Id., ¶ 27. There is no allegation regarding who specifically prevented her from viewing the evidence or who destroyed it prior to the hearing.

    Assuming that WLA, which is a public charter school, is subject to a Fifth Amendment challenge via 42 U.S.C. § 1983, a plaintiff may not hold the school vicariously liable for the acts of its employees. Instead, he must plead that "a custom or policy . . . caused the violation." Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations omitted). Here, D.P. never alleges that WLA (or any D.C. school system, for that matter) has a policy of destroying or not retaining evidence in connection with a disciplinary hearing. Nor does he identify any individual or body as a "policy maker" capable of exposing the school to § 1983

liability.  See Allen-Brown v. Dist. of Columbia, 54 F. Supp. 3d 35, 42 (D.D.C. 2014) ("[C]ourts

in this district have held that a final policy maker typically must be at least an agency head or the

governing body of an agency.") (citation omitted).  Even if the Discipline Committee were such

a body, the school could only be liable for its decision if the Committee "demonstrated

'deliberate indifference to the risk that a violation of a particular constitutional or statutory right

[would] follow [its] decision.'"  Blue v. Dist. of Columbia, 811 F.3d 14, 19 (D.C. Cir. 2015)

(first alteration in original) (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 411 (1997)).

D.P. has alleged no facts plausibly giving rise to any such claim.  As such, he comes up short on

this constitutional count as well.

     In any event, the Court could alternatively hold that, even absent the policy requirement,

D.P. has not sufficiently pled a due-process violation.  He admits that WLA first held a

suspension hearing regarding the possession of marijuana.  See Compl., ¶ 28.  Its Discipline

Committee then also found that D.P. had possessed marijuana and expelled him.  Id., ¶ 30.

Plaintiff offers no argument that the constitution entitles a student to more process than the two

hearings he was afforded here, see Goss v. Lopez, 419 U.S. 582-83 ("As a general rule notice

and hearing should precede removal of the student from school."), and he points to no authority

holding that a school's failure to preserve evidence or to permit Plaintiff to view it in connection

with a disciplinary hearing somehow amounts to a constitutional violation.  Cf. Shinabargar v.

Bd. of Trustees of Univ. of D.C., 164 F. Supp. 3d 1, 26 (D.D.C. 2016) (noting that in this context

"an informal give-and-take between the student and the administrative body dismissing him"

satisfies guarantee of due process) (internal quotation marks omitted). This count, consequently, cannot proceed.

C. Rehabilitation Act

D.P.'s Rehabilitation Act claim fares no better. He alleges therein that "WLA has violated Section 504 . . . by illegally withholding information at the manifestation determination meeting on September 6, 2017 regarding DP's behavioral concerns that could plausibly have resulted in the behavior being a manifestation of his disability." Id., ¶ 102. Although not spelled out, perhaps the argument is that if the marijuana were a manifestation of his disability, he might not have been expelled and thus would not have been denied re-enrollment.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his diability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). To even be subject to the Act, WLA must thus be a program or entity that receives federal financial assistance, which D.P. has not alleged is the case. Even were this to be so, Plaintiff must do more under the Rehabilitation Act than simply allege a failure to provide a FAPE; instead, he must demonstrate "either bad faith or gross misjudgment on the part of the governmental defendants." Robinson ex rel. D.R. v. Dist. of Columbia, 535 F. Supp. 2d 38, 42 (D.D.C. 2008) (citations omitted). This he has not done since he alleges broadly that WLA withheld information at the meeting, but never says anywhere even what that information was.

More significant, D.P.'s mother agreed that the incident was not a manifestation of his disability. See Compl., ¶ 31. It would thus be a stretch to somehow claim bad faith or gross misjudgment in relation to a decision in which one concurs. Perhaps that is why Plaintiff says

nothing in his Opposition on the Rehabilitation Act, instead, rather oddly, citing Commerce Clause cases and then saying, "In this matter, the Plaintiff has alleged facts that establishes that the Defendant has obligated all taxicabs to use a particular application and a particular service . . . ." Opp. at 19. The Court can only assume that this section is cut and pasted from a brief about the regulation of hired vehicles and would endorse to Plaintiff's counsel the merits of proofreading.

## IV.    Conclusion

The Court, accordingly, will grant Defendant's Motion and dismiss Count I with prejudice and the others without prejudice. A contemporaneous Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: March 22, 2019